# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ESSEX INSURANCE COMPANY,**                                      **PLAINTIFF,**

**VS.**                         **CIVIL ACTION NO. 4:05CV104-P-B**

**GREENVILLE CONVALESCENT HOME,
INC.; GLADIS EVANS, ET AL.,**                                **DEFENDANTS.**

## FINAL JUDGMENT

This matter comes before the court upon Essex Insurance Company's Motion for Summary Judgment [27-1]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On April 26, 2005, Essex Insurance Company filed the instant action seeking a declaratory judgment from the court that Essex owed no duty to defend its insureds, the nursing home defendants, against the claims filed against them by Annie Greer, as the personal representative of Gladis Evans, in the Circuit Court of Washington County, Mississippi in August 2004. Essex also seeks a declaration that they owe no duty to indemnify.

Although the causes of action are not clearly delineated in the State Court Complaint, it appears that the claims Evans levies are those of negligence, gross negligence, intentional infliction of emotional distress, and fraud.

On October 21, 2005, Essex filed the instant motion for summary judgment in which they argue there is no duty to defend because there is no duty to indemnify. Essex maintains there is no coverage because: (1) many of the claims occurred before the first policy took effect and after the

1

third policy expired; (2) there was no "occurrence" triggering coverage for "bodily injury"; and (3) some or all of the claims fall under one or all of the following exclusions: (a) the expected or intended injury exclusion (b) punitive damages exclusion; (c) hiring and/or supervision exclusions; (d) dishonest, fraudulent, criminal, or malicious acts or omissions exclusion; (e) the third policy's breach of contract exclusion; and (f) the assault and battery exclusion.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5 Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Duty to Defend**

An insurer's duty to defend "is broader than the insurer's duty to indemnify under its policy of insurance; the insurer has a duty to defend when there is *any* basis for *potential* liability under the policy." *Titan Indemnity Company v. Pope*, 876 So.2d 1096, 1101 (Miss. 2004) (emphasis added). "Any basis for potential liability" is a rather low threshold for triggering a duty to defend.

Having reviewed the briefs, the court concludes that there is no question that Essex owes its insured a duty to defend because, as explained below, there is a reasonable basis for potential liability.

**C. Duty to Indemnify**

"Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Noxubee County School District,* 883 So.2d 1159, 1165 (Miss. 2004). Furthermore, "[a]ny ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Nationwide Mutual Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994).

1. Claims Occurring Before or After Coverage Period

Gladis Evans became a resident in the Greenville Convalescent Home ("GCH") some time in September 1998. As of December 16, 2005, Evans remains a resident at the nursing home.

Essex's first policy to the nursing home was effective from June 7, 1997 to June 7, 1999 after one renewal. The second policy was effective from June 7, 1999 to July 7, 2000, which included a one-month renewal. The third policy was effective from July 7, 2000 to July 7, 2001.

4

Essex is correct that it has no duty to indemnify any claims occurring before June 7, 1997 or after July 7, 2001. However, since Gladis Evans did not become a resident until September 1998, there are no allegations stated in the Complaint occurring prior to June 7, 1997. At the same time, any allegations occurring after July 7, 2001 would not be covered by Essex's insurance policies.

2. "Occurrence"

Essex points out that the policies provide liability coverage for "bodily injury" caused by an "occurrence." "Occurrence" is defined in the policies as an "accident, including continuous or repeated exposure to substantially the same harmful conditions."

Essex argues that under Mississippi law "accident" for liability insurance purposes means "an unde[signed], sudden, and unexpected event." *Allstate Ins. Co. v. Moulton*, 464 So.2d 502, 509 (Miss. 1985). Since the allegations in the Complaint largely constitute omissions (*e.g.*, failure to provide adequate food, hydration, care, nursing staff, etc.), no "events" took place since omissions are not events. The court rejects this argument as clearly without merit. In any event, Evans is correct when they point out that the policy defines accident to include not only an event, but also "continuous or repeated exposure to substantially the same harmful conditions."

Essex also cites *ACS Construction Co. v. CGH*, 332 F.3d 885 (5th Cir. 2003) for the proposition that there was no "occurrence." In *ACS Construction,* the Fifth Circuit Court of Appeals held that with regard to the term "occurrence" under Mississippi law, "the term accident refers to [the insured's] action and not whatever unintended damages flowed from that act." 332 F.3d at 888-9 (citing *Moulton*, 464 So.2d at 510 as reaffirmed by *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So.2d 196 (Miss. 2002)). In other words, the Mississippi Supreme Court has held that defining

5

"accident" as it relates to the definition of "occurrence" requires answering the question "whether the insured intended the *underlying action*" and not "whether the insured intended the *consequences* of his actions." *Id*. at 888 (emphasis added).

In *ACS Construction*, a case originating from this court, the construction company contracted to build munitions bunkers for the U.S. Air Force and subcontracted out installation of a waterproofing membrane in the roofs. When the membranes leaked, the subcontractor refused to repair. Thus, the construction company had to repair the damage, suffering a loss of about $190,000. The construction company then sought indemnification from their insurer for the loss incurred. The Fifth Circuit affirmed this court's conclusion that there was no "occurrence" and thus no coverage because the the construction company intended to hire the subcontractor to install the membrane even though it did not intend for the subcontractor to perform faulty work resulting in a leak. *Id*. at 889.

The decision in *ACS Construction* does not act to preclude coverage in this case simply because the "underlying action" is essentially negligently failing to provide adequate care to Gladis Evans. There is no evidence that the nursing home defendants intended to fail to provide adequate care.

The situation in this case is different from that in *ACS Construction* because no subcontractor or intervening person or event is involved. It bears repeating that the Fifth Circuit concluded in *ACS Construction* that the "underlying action" was not the installation of the membrane that turned out to be faulty, causing leaks. Rather, the underlying action was hiring the subcontractor to install the membrane, which the contractor did intend to do. As the Fifth Circuit put it: "Just as Moulton

6

intended to file a complaint against Wall but may not have intended to cause him embarrassment, ACS intended to hire [the subcontractor] to install the membrane but did not intend for the work to be faulty or result in a leak." 332 F.3d at 889 (comparing the situation in *Moulton*, 464 So.2d 507 with that in *ACS Construction*).

In any event, it is undisputed that the policies contain a Professional Liability Endorsement. This endorsement, though "written in conjunction with [the] commercial general liability [policy]," expressly "changes the policy" and "modifies insurance provided under ... [the] commercial general liability coverage party." According to this endorsement:

> Insuring Agreement a. under Coverage A (Section I) is replaced by the following:
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies and will include damages arising out of any negligent act, error or omission in rendering or failure to render professional services of the type described in the Schedule of this policy.
>
> We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

Thus, the court concludes that Evans's claims of negligence, gross negligence, and medical malpractice constitute "bodily injury" and an "occurrence." However, the claims of fraud and intentional infliction of emotional distress do not involve an "occurrence" because those claims by their nature do not allege accidental acts or omissions, but rather intentional conduct.

3. Expected or Intended Injury Exclusion

The policies contain an exclusion providing that "[t]his insurance does not apply to ... "bodily injury" ... expected or intended from the standpoint of the insured." Essex argues that the nursing

home defendants expected or reasonably should have expected that the alleged failures to provide adequate care and services would cause the type of "bodily injuries" to Gladis Evans for which they have been sued.

This argument has no merit. "In Mississippi, '[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it.'" *Lewise v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss. 1998) (citing *Coleman v. Sanford*, 521 So.2d 876, 878 (Miss. 1988)). The primary nature of the underlying lawsuit is that of negligence and medical malpractice. Those causes of action do not involve intentional acts. Therefore, the expected or intended injury exclusion is inapplicable.

4. Punitive Damages Exclusion

It is undisputed that all three policies contain an exclusion for punitive or exemplary damages." Therefore, the court concludes that any punitive damages that may be recovered in the underlying suit are not covered by the policies.

5. Hiring and Supervision Exclusion

The first and second policies state: "The insurance does not apply to any claim, suit, cost or expense arising out of: ... Charges or allegations of negligent hiring, training, placement, or supervision." The third policy states that "Negligent Hiring, Training, Placement, Retention, Supervision, Discrimination or Harassment charges or allegations are not covered under this policy, nor are any expenses or obligation to share damages with or repay another who must pay damages from same."

Essex argues that this exclusion acts to bar many of the allegations in the Complaint

involving failure to provide adequate care, number of nurses, supervision, training, etc.

The Mississippi Supreme Court observed that a "claim of negligent hiring, retention, ans supervision ... is simply a negligence claim, requiring a finding of duty, breach, causation and damage." *Roman Catholic Diocese of Jackson v. Morrison*, 905 So.2d 1213 (Miss. 2005).

This court concludes that the hiring and supervision exclusion does not bar coverage of the underlying negligence and medical malpractice claims since there are no distinct causes of action in Mississippi for negligent hiring, training, placement, and supervision.

6. Dishonesty and Fraud Exclusion

All three policies state that the insurance "does not apply to 'bodily injury' ... [f]rom any dishonest, fraudulent, criminal or malicious act or omission of the insured, partner or employee or any person for whom you are legally responsible." Essex urges that this exclusion bars coverage for many claims in the underlying action, including (1) allegations that many of the nursing home's failures "constitute malice," (2) the nursing home "intentionally engaged in common law fraud," and (3) the nursing home engaged in dishonesty by accepting payment for services and care that was not provided to Gladis Evans.

The dishonesty and fraud exclusion would only act to bar coverage for the resident's fraud claim. Since the court has already concluded that the fraud claim is not an "occurrence," however, the applicability of the exclusion is moot. Though the Complaint may use the word "malice," the claims are framed in terms of negligence and gross negligence, not intentional conduct.

7. Breach of Contract Exclusion

The third policy, effective July 7, 2000 to July 7, 2001, contained a breach of contract

exclusion which states that the insurance "does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether 'bodily injury,' 'property damage,' ... or damages of any type is alleged." Essex argues that when Evans was admitted in 1998, the nursing home entered into a contractual relationship with her to provide resident care and services. Therefore, Essex maintains, Evans's claims are really just a breach of contract claim.

This argument is without merit. There is no breach of contract cause of action set out in the Complaint. Therefore, this exclusion does not bar coverage of any claims asserted in the underlying suit.

8. The Assault and Battery Exclusion

The first two policies exclude coverage for "any claim, suit, cost or expense arising out of ... [a]ssault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person." Similarly, the third policy excludes coverage for claims arising from "[a]llegations of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person."

Essex argues that there are many allegations in the underlying Complaint of assault and battery framed in terms of "abuse." For example, in Count I, the Complaint states that the administrator, "Defendant Bonnie Hatten is being sued in her individual capacity for her own acts of abuse, gross negligence, and/or negligence." Complaint ¶ 21. There are many other instances of use of the term "abuse."

In response, Evans argues that the policy does not define assault or battery. Furthermore, even though it uses the word "abuse," the Complaint does not allege assault or battery under Mississippi law for the simple reason that there are no allegations of intent – an element required for both assault and battery.

The court concludes that the assault and battery exclusion does not bar coverage for Evans's claims since none of them are framed as claims for civil assault or battery. Rather, the primary nature of the Complaint involves claims of negligence and gross negligence.

### III. CONCLUSION

Essex Insurance Company's Motion for Summary Judgment [29-1] should be granted in part and denied in part. Essentially, Essex owes its insureds a duty to defend against Gladis Evans's claims pending in the Circuit Court of Washington County, Mississippi. Essex also owes a duty to indemnify their insureds for any damages recovered by Evans's claims of negligence, gross negligence, and medical malpractice. Essex does not owe a duty to indemnify the claims of fraud and intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Essex Insurance Company's Motion for Summary Judgment [27-1] is **GRANTED IN PART AND DENIED IN PART** as explained above; thus,

(2) This case is **CLOSED**.

**SO ORDERED** this the 8th day of August, A.D., 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE